IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 11-cv-02749-WYD-KLM

KIMBERLY ADAIR,

    Plaintiff,

v.

EL PUEBLO BOYS & GIRLS RANCH, INC. LONG TERM DISABILITY PLAN (a/k/a "Your Group Employee Benefits Plan"; a/k/a Plan Number G204821/00001; also left specifically unnamed in an Addendum To Summary Plan Description),

    Defendant.

## ORDER

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment and Brief in Support Thereof filed July 2, 2012. The motion is fully briefed. Defendant contends in the motion that judgment is appropriate as a matter of law on Plaintiff's action under the Employee Retirement Income Security Act ("ERISA") because she failed to exhaust her administrative remedies in connection with her plan administrator's denial of disability benefits beyond December 30, 2005.[1]

I.    FACTUAL BACKGROUND

Plaintiff began her employment with El Pueblo Boys' & Girls' Ranch on June 18, 2001, as director of human resources. Plaintiff's last day of work with El Pueblo Boys' & Girls' Ranch was September 30, 2002.

---

[1] Plaintiff was awarded disability benefits from December 30, 2002 through December 30, 2005.

On or about December 9, 2002, Plaintiff submitted a claim for long term disability benefits. Pursuant to the El Pueblo Boys' & Girls' Ranch, Inc. Long Term Disability Plan, Plaintiff submitted the claim to United States Life Insurance Company, the entity that issued the subject disability policy for the employer.

Plaintiff's application was analyzed by Disability Reinsurance Management Services, Inc. ("DRMS"). On or about March 14, 2003, DRMS notified Plaintiff that her claim was denied. On or about June 25, 2003, Plaintiff appealed the denial of benefits. DRMS affirmed the denial of benefits on or about January 8, 2004.

On July 11, 2006, Plaintiff commenced a prior action in this Court, styled *Kimberly Adair v. El Pueblo Boys' & Girls' Ranch, Inc. Long Term Disability Plan*, Civil Action No. 06-cv-01343-WYD-CBS. She claimed that the plan administrator had denied her application for long term disability benefits in violation of ERISA and sought an award of past and future disability benefits. (See Complaint in 06-cv-01343, Ex. A to Mot. for Summ. J.) On March 20, 2008, after having reviewed the denial of benefits on a *de novo* basis, I denied Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Administrative Record and remanded the case to Defendant for further fact finding. (Mot. Summ. J., Ex. B.) The remand was based on, among other things, my finding that the denial of benefits to Plaintiff by Defendant's plan administrator "did not take into account or make adequate findings as to all of Plaintiff's impairments and whether these impairments impacted her ability to work." *(Id.* at 36.)

On June 19, 2008, AIG Employee Benefit Solutions' Disability Claims Center ("AIG"), who handled Plaintiff's claim for LTD benefits on remand, sent a letter to

Plaintiff's counsel requesting additional records.  The letter only requested medical information between the dates of October 2003 and December 2004.  On August 7, 2008, Plaintiff's counsel sent AIG medical records from 2004 through July 2008, including a psychiatric evaluation dated February 20, 2004, which AIG acknowledged receiving.  On September 15, 2008, Plaintiff's counsel sent the psychiatric evaluation to AIG again after AIG stated that it did not have this in its records.

On October 15, 2008, AIG issued a letter approving Ms. Adair's claim for long term disability ("LTD") benefits from December 30, 2002 through August 20, 2004.  (Mot. Summ. J., Ex. F.)  The letter stated that in order for LTD benefits to continue beyond August 20, 2004, Plaintiff "must provide additional medical documentation from February 20, 2004 through the present."  (*Id.*)  Plaintiff's counsel responded by letter of October 17, 2008, questioning why benefits were not awarded beyond August 20, 2004, and asking AIG to identify (a) what information it believed it was lacking in its file and (b) what, if any, information in the file indicated that Plaintiff's qualifications for disability benefits changed on August 20, 2004.

On October 20, 2008, AIG sent a letter stating it had determined that Plaintiff met the definition of disability defined in the Group Disability Policy.  It did not limit LTD benefits to those accruing before August 20, 2004.  AIG also faxed a letter on October 23, 2008, to Plaintiff's counsel, indicating this.

On November 25, 2008, AIG notified Plaintiff that it did not possess medical records beyond the date of a psychiatric evaluation of March 29, 2004, and that based on that record, it would extend LTD benefits only through December 29, 2004.  (Mot. Summ. J.,

Ex. G.)  On December 3, 2008, AIG changed the date on its November 25, 2008 letter to December 3, 2008, and resent the same letter.

On December 17, 2008, Plaintiff's counsel sent AIG a letter from Dr. Reynolds, who Plaintiff had seen on December 15, 2008.  Counsel also sent AIG updated records from Dr. Ramos from 2008, a letter from Dr. Ramos dated December 15, 2008, and an AIG form that was signed by Plaintiff in December 2008.

On February 17, 2009, AIG sent a letter stating that the only updated records it had received were "two office notes from Dr. Michael Ramos, dated 7/22/08 and 12/15/08." (EPR0138.)  Despite that letter, on March 11, 2009, AIG sent a letter stating that it had not received Dr. Ramos' office records and it was "still awaiting additional medical records from December 30, 2004 through the present." (EPR 0133.)  Then on April 13, 2009, AIG sent a letter stating that it had not received Dr. Ramos' office records from December 30, 2004 through the present." (EPR0121).

On April 14, 2009, Plaintiff's counsel sent AIG a letter with a CD containing all the records again, and stating that it should "already have everything on this disk, with the exception of some proof of mailing scans, etc." (EPR0115.)

AIG did not issue any further written communications to either Plaintiff or her counsel until December 29, 2009.  On that date, AIG notified Plaintiff her benefits were extended to December 29, 2005, and terminated effective December 30, 2005.  (Mot. Summ. J., Ex. C)  This final termination letter included a notice that any appeal of the termination decision must be submitted in writing within 180 days of receipt of the notification.  *(Id.* at EPR 0028.)

-4-

Plaintiff did not submit an appeal of the termination decision. Instead, on June 2, 2010, Plaintiff moved to reopen the case and requested that the Court award further benefits. (Mot. Summ. J., Ex. D.) I denied that motion by Order of October 29, 2010. (*Id.*, Ex. E.) Plaintiff commenced the current action with the filing of her Complaint on October 21, 2011.

II. ANALYSIS

    A.    Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). When applying the summary judgment standard, the court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing

summary judgment.'" *Id.* (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

### B. Whether Summary Judgment is Appropriate in this Case

Defendant argues that there is no genuine dispute that the Plaintiff, with no excuse, failed to exhaust her administrative remedies, and that Defendant is entitled to judgment as a matter of law. The Tenth Circuit holds that "'exhaustion of administrative (i.e., company-or-plan-provided) remedies is an implicit prerequisite to seeking judicial relief'" on an ERISA claim. *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) (quotations omitted). "[O]therwise, premature judicial interference with the interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review." *Id.*

Nevertheless, "'because ERISA itself does not specifically require the exhaustion of administrative remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion.'" *McGraw*, 137 F.3d at 1263 (quotation omitted). In exercising this discretion, courts have held that exhaustion is not required under two limited circumstances: first, when resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate." *Id.*

Plaintiff first argues that she satisfied her exhaustion requirements prior to filing the first lawsuit, as the administrative review requirement runs from the first denial of the claim, not the final denial, citing 29 C.F.R. § 2560.503-1(h)(3)(1). She further argues that there is no statute, regulation, or case law applying an exhaustion requirement to

-6-

post remand reviews. Here, she asserts that there was no new claim application, denial, and review process initiated after the case was remanded by the Court's March 20, 2008 Order. Plaintiff notes that the Court did not remand for a renewal of the administrative appeal process, but rather for further fact-finding, *i.e.*, for reconsideration of the Plan's previous denial. Thus, she asserts that, in effect, the Court continued the previous administrative process.

I reject this argument. The Tenth Circuit has specifically held that the exhaustion requirement is applicable to a case that had been previously remanded, as here. *DeMoss v. Matrix Absence Mgmt., Inc.*, 438 F. App'x 650, 653 (10th Cir. 2011) (plaintiff's failure to request administrative review of the denial during the remand period prohibited his pursuit of relief via litigation); *see also Kumar v. Nat'l Med. Enters.,* 267 Cal. Rptr. 452, 456 (Cal. App. 1990) (appeal dismissed; appellant must exhaust administrative remedies after remand before returning to court). Further, it is undisputed that AIG issued a detailed decision on December 29, 2009, that clearly notified Plaintiff of its exhaustion requirement – it notified Plaintiff as required by regulation that she had 180 days following its "adverse benefit determination" to appeal the determination. Instead of pursuing the appeal, Plaintiff proceeded directly to this action, nearly two years after AIG's termination decision was issued.

Plaintiff also argues that an exhaustion requirement would result in "an endless loop" or "endless cycle" of administrative determinations. This argument makes no sense. Whether in the initial claims process or on remand, the exhaustion of remedies requirement serves the same purposes:

> First, exhaustion protects "administrative agency authority." Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures."
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal citations omitted). These purposes are served just as well by the administrative appeal of a decision on remand as by the administrative appeal of an initial decision. Theoretically, "an endless cycle" could ensue any time an administrative decision is remanded for reconsideration, but an appeal is more likely to abate than to create such a cycle, as recognized by *Woodford*.

Plaintiff is also incorrect in her statement that no "new" review and denial process occurred after this case was remanded. On the contrary, the case was remanded specifically for a reevaluation of Plaintiff's prior claim and a review of "further relevant evidence" to be submitted by Plaintiff. (Mot. Summ. J., Ex. B, March 20, 2008, Order at 45.) In compliance with the Court's Order, AIG reevaluated Plaintiff's claim in light of both previously submitted records and Plaintiff's additional submissions, paid her disability benefits for 2002-2005, and terminated those benefits effective December 30, 2005. Plaintiff's characterization of the process as mere "further fact-finding" does not distinguish this evaluation and determination from any other ERISA proceeding requiring the exhaustion of administrative remedies prior to the filing of litigation.

The final issue is whether Plaintiff was excused from the exhaustion requirement. Plaintiff does not assert that exhaustion would have been futile or that the remedy provided by AIG was inadequate.  Instead, Plaintiff complains about the numerous procedural irregularities that allegedly occurred on remand, including AIG's alleged protraction of the review process, deficiencies in the initial adverse benefit decision, AIG's denial of benefits based on lack of medical information despite the fact that this information had allegedly been provided to AIG on several occasions, and the fact that AIG did not issue its determination within 45 days of the Court's remand as allegedly required by regulation.  Based on these irregularities, Plaintiff argues that she should "be deemed to have exhausted the administrative remedies. . . ."  29 C.F.R. § 2560.503-1(l).  Defendant disagrees, arguing that when a plan deviates from ERISA's procedural requirements, the remedy is a *de novo* review of the plan's benefits determination.

Turning to my analysis of this issue, the Tenth Circuit has noted that 29 C.F.R. § 2560.503–1(l) was revised, effective in 2002, to provide:

> [i]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be *deemed to have exhausted the administrative remedies* available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act [29 U.S.C. § 1132(a)] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789, 797-99 (10th Cir. 2010) (citing § 2560.503–1(l) (2002)(emphasis added); *see also Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585

F.3d 1311, 1315 n. 4 (10th Cir. 2009) ("because AIG did not notify Mr. Rasenack of the status of his appeal within the Plan's deadline, he was considered to have exhausted his administrative remedies"). The *LaAsmar* court noted that "[t]his regulation, like its predecessor, protects a claimant by insuring that the administrative appeals process does not go on indefinitely." *Id.*²

I note that *LaAsmar* did not decide whether the specific types of irregularities argued by Plaintiff are sufficient to excuse exhaustion. While Defendant argues that exhaustion should only be deemed excused under § 2560.503-1(l) in connection with the appeal of an adverse benefit determination, *see* § 2560.503-1(h), I disagree. Instead, I find that exhaustion should be deemed excused under § 2560.503–1(l) when the plan administrator fails to comply with any of the claim procedures set out in the regulation. That appears to be consistent with the plain language of the regulation, stating that a claimant shall be deemed to have exhausted administrative remedies "[i]n the case of a failure of a plan to establish or follow claims procedures consistent with the requirements of *this section. Id.* (emphasis added). If the claim procedures were limited only to procedures regarding the appeal of an adverse benefit determination, the regulation would need to have referred only to subsection (h) of the regulation.

---

² While *LaAsmar* also noted that the court may apply a de novo standard of review to the plan administrator's decision based on such procedural irregularities, as pointed out by Defendant, this does not impact or diminish in any way its other holding as to exhaustion of administrative remedies.

One claim procedure under the regulation that is pertinent to this case requires as to disability benefit claims that the plan administrator "notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination. . .not later than 45 days after receipt of the claim by the plan." 29 C.F.R. § 2560.503-1(f)(3). Defendant does not dispute that this provision is applicable to AIG's LTD benefit ruling, and it is undisputed that AIG did not issue its decision within this time frame.[3] I find that this failure means that Plaintiff is deemed excused from exhaustion.

As further support for my finding, I note that the Ninth Circuit in *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1080 (9th Cir. 2011), found that the district court erred in dismissing a claimant's case without prejudice for failure to exhaust. The court based its finding on the fact that the claimant's administrative remedies should have been deemed exhausted under § 2560.503–1(l) because the plan administrator failed to resolve the claimant's request within the required time limits. *Id.* at 1077-80. Similarly, the Second Circuit stated, "[i]f the plan administrator misses any of the deadlines [including the initial deadline to decide a claim within 45 days], the claim is deemed denied with administrative remedies exhausted thereby permitting a claimant to immediately bring an action in federal court". *Burke v. PriceWaterHouseCoopers LLP Long Term*, 572 F.3d 76, 80 (2d Cir. 2009). I believe this authority is consistent with

---

[3] While the regulation also provides that this period may be extended for two periods of up to 30 days, AIG also did not issue its decision within that time frame. Nor did it notify Plaintiff "of the circumstances requiring the extension(s) and the date by which the plan expected to render a decision, as required for the plan administrator to be able to obtain such an extension. *Id.*

-11-

§ 2560.503-1(l), and is likely how the Tenth Circuit would rule on the issue based on

*LaAsmar*.[4]

III. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment, seeking judgment as a matter of law on Plaintiff's ERISA action for failure to exhaust, is **DENIED**. Plaintiff is deemed to have exhausted her administrative remedies pursuant to 29 C.F.R. § 2560.503–1(l). It is

FURTHER ORDERED that a hearing on Plaintiff's ERISA claim for long term disability benefits is set for **Thursday, March 21, 2013, at 2:00 p.m.**

Dated: January 24, 2013.

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel,
Senior United States District Judge

---

[4] Plaintiff also argues that AIG's letter of October 15, 2008, was the initial adverse benefit determination, *see* § 2560.503-1(m)(4), and that the letter did not comply with all the requirements of § 2560.503-1(g). For example, the letter does not provide a statement of Plaintiff's right to bring a civil action under section 502(a) of ERISA. § 2560.503-1(g)(1)(iv). This would appear to provide another basis for finding that Plaintiff is deemed to have exhausted her administrative remedies.